IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Crim. No. 07-287(ESH) |
| v. ) | |
| ADRIAN WEBB ) | |

**MOTION TO SUPPRESS EVIDENCE AND STATEMENTS AND**
**MEMORANDUM IN SUPPORT THEREOF**

Defendant, Adrian Webb, through undersigned counsel, respectfully moves this Honorable Court, pursuant to the Fourth and Fifth Amendments to the United States Constitution, to suppress at trial (1) all evidence seized by law enforcement agents as the fruit of an illegal seizure and search, and (2) all statements made by the Defendant at the time of his arrest. This motion is made pursuant to Fed. R. Crim. P. 12(b)(3), and is supported by the discussion below. An evidentiary hearing on this motion is respectfully requested.
.

**BACKGROUND**

**1.    Procedural Background**

On October 23, 2007, Mr. Webb was arrested and charged with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). Two days later, Mr. Webb was indicted on the same charge.

2.    **Factual Background**[1]

The government alleges that, at approximately 6:25 p.m. on October 23, 2007, Metropolitan Police Department officers conducting interdiction operations in the Third District observed Mr. Webb riding a bicycle. According to the P.D. 163 filed in this case, Mr. Webb bent down several times while riding his bicycle and repeatedly placed his right hand on his waistband area. The government alleges that one of the officers followed Mr. Webb, believing he was armed, and at one point ordered him to stop. Mr. Webb did not stop, but rather fled on his bicycle. The officer pursued Mr. Webb and issued a lookout. Eventually, Mr. Webb fell off his bicycle and ran on foot. Two officers subsequently observed Mr. Webb toss to the ground a black and silver handgun. Following the toss, Mr. Webb allegedly continued running and was later apprehended by one of the officers who had observed the toss as well as an assisting officer.

The P.D. 163 indicates that Mr. Webb made pre-Miranda statements regarding the gun on the scene. Specifically, the government alleges that, when asked why he was "on papers," Mr. Webb responded "for the same thing as this" and indicated that "there's people out here getting shot." Mr. Webb subsequently made statements regarding the gun that were captured on videotape.

## ARGUMENT

1.    **All Evidence Seized and Statements Taken Must Be Suppressed Because they were Obtained in Violation of the Fourth and Fifth Amendments**

---

[1] This statement of facts is a summary based on the P.D. 163 police report and other information provided by the Government to the Defendant. By including in this motion the facts as alleged by the Government, the Defendant does not in any way concede that these facts are accurate or true.

2

A.     The Court should suppress the gun that was allegedly recovered from the ground.

The Fourth Amendment requires that all searches and seizures, including seizures of the person, be "reasonable." Vernonia School District 47J v. Acton, 515 U.S. 646, 652 (1995). A seizure occurs in one of two circumstances: (1) officers apply physical force to the individual, and/or (2) the individual submits to a show of authority by law enforcement officers. California v. Hodari D, 499 U.S. 621, 626 (1991). In order to seize an individual, officers must have either (1) probable cause to arrest the individual, see Michigan v. DeFillipo, 443 U.S. 31, 36 (1979), or (2) reasonable suspicion to conduct an investigatory stop, see Terry v. Ohio, 392 U.S. 1, 20-27 (1968).

Officers can conduct an arrest when there exist "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." DeFillipo, 443 U.S. at 37. Officers can conduct an investigatory stop when they have reasonable suspicion, based upon articulable facts, that criminal activity "'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (citing Terry, 392 U.S. at 30). The government bears the burden of adducing sworn testimony sufficient to satisfy this Court that the facts and circumstances known to the seizing officers at the time they stopped and arrested Mr. Webb justified those seizures. See Florida v. Royer, 460 U.S. 491, 500 (1983); United States v. Allen, 629 F.2d 51, 55 (D.C. Cir. 1980)

In this case, evidence adduced at an evidentiary hearing will establish that Mr. Webb's stop and seizure were unlawful and that there was no probable cause to support his arrest. The government will not be able to adduce sufficient sworn testimony to demonstrate that the MPD officers possessed the requisite reasonable suspicion to stop Mr. Webb when they did. The officers

had no reason to impede, pursue and stop Mr. Webb as he was riding his bicycle and prior to the point in time that he allegedly dropped the gun in the area where he is alleged to have run. Absent such evidence, the government bears the burden at a hearing of showing that officers did not forcibly cause Mr. Webb to abandon the firearm – either by the application of physical force, however temporary, or during a period of submission to a show of authority, however temporary.  Because the  firearm was recovered after Mr. Webb was illegally seized, and because the alleged statement was made after he was illegally seized, the physical evidence and the statement must be suppressed as the tainted fruits of the illegal seizure.  Taylor v. Alabama, 457 U.S. 687 (1982); Wong Sun v. United States, 371 U.S. 471 (1963).

## II.     MR. WEBB'S STATEMENTS WERE MADE INVOLUNTARILY

The government has alleged that Mr. Webb made various statements surrounding the gun the police officers seized.  Before introducing these statement at trial, either in its case-in-chief or as impeachment or rebuttal evidence, the government bears the burden of proving that the statements were voluntary.  See Lego v. Twomey, 404 U.S. 477 (1972).  The test for voluntariness is whether a statement is the "product of an essentially free and unconstrained choice by its maker."  See, e.g., Culombe v. Connecticut, 367 U.S. 568, 602 (1961).  The determination of whether a statement was made voluntarily "requires a careful evaluation of all the circumstances of the interrogation."  See Mincey v. Arizona, 437 U.S. 385, 402 (1978).  The Court must consider the "totality of the circumstances" in deciding whether the defendant made his statement voluntarily.  Fikes v. Alabama, 352 U.S. 191 (1957).  See also Gallegos v. Colorado, 370 U.S. 49 (1962) (determination of whether an accused's statement was made involuntarily so as to render it inadmissible requires close scrutiny

of the facts of each individual case); Clewis v. Texas, 386 U.S. 707 (1967).

Specifically, the Court must examine the efforts to overbear Mr. Webb's free will in relation to his capacity to resist those efforts. Davis v. North Carolina, 384 U.S. 737 (1966); Culombe v. Connecticut, 367 U.S. 568, 607 (1961). The Court must examine Mr. Webb's "background, experience, and conduct," North Carolina v. Butler, 441 U.S. 369, 375 (1979), to determine whether his statements were the products of a rational intellect and a free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1980). Here, the evidence at a hearing will show that any statements allegedly made by Mr. Webb were made involuntarily and thus must be suppressed under the Fifth Amendment.

### III.   MR. WEBB'S STATEMENT ON THE SCENE WAS OBTAINED IN VIOLATION OF MIRANDA.

Even if it was made voluntarily, Miranda requires suppression of Mr. Webb's statement on the scene because it was obtained in violation of his Miranda rights. See, e.g., Pennsylvania v. Muniz, 496 U.S. 582, 110 S. Ct. 2638, 2643-44 (1990). A person is in "custody" under Miranda when he "has been . . . deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. Whether a person is in custody depends upon "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984). "[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (footnotes omitted). In this case, Mr. Webb was "in custody" when he allegedly made the statement. Moreover, the government bears the

burden of establishing that when Mr. Webb allegedly made the statement at issue, he intentionally relinquished a known right or privilege, and there can be no finding that Mr. Webb intentionally relinquished a known right or privilege. See Tague v. Louisiana, 444 U.S. 469, 471 (1980). Under these circumstances, the Court should suppress the statement Mr. Webb allegedly made on the scene to the officers.

## CONCLUSION

For the foregoing reasons, Mr. Webb asserts that his stop, search and seizure were unlawful. If the government disagrees, it should be required to justify the stop, search and arrest of Mr. Webb at a hearing. If it cannot do so, Mr. Webb respectfully requests that this Court suppress all evidence seized and any statement allegedly made as a result of his unconstitutional stop, search and arrest.

Respectfully submitted,

A.J. Kramer
Federal Public Defender

_____
Lara Quint
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ADRIAN WEBB )<br>) | Crim. No. 07-287(ESH) |

### ORDER

_____ Upon consideration of Mr. Webb's Motion to Suppress Evidence and Statements, it is by the Court hereby

    ORDERED that the motion is GRANTED.

    SO ORDERED.


_____    _____

DATE          UNITED STATES DISTRICT JUDGE ELLEN SEGAL HUVELLE


Copies to:

Lara Quint, AFPD
Louis Ramos, AUSA